McCULLEY, Appellant,

v.

GOOD SAMARITAN HOSPITAL et al., Appellees.

[Cite as *McCulley v. Good Samaritan Hosp.* (1998), 131 Ohio App.3d 341.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970056.

Decided June 5, 1998.

R. *Bruce Selnick,* for appellant.

*Paul W. McCartney,* for appellee Good Samaritan Hospital.

*Michael F. Lyon,* for appellees Shari Matvey, M.D., Anthony S. Cionni, M.D., Thomas Schrimpf, M.D., Terri Becker, and Anesthesia Associates of Cincinnati, Inc.

---

MARIANNA BROWN BETTMAN, Judge.

Plaintiff-appellant Michael McCulley appeals from the trial court's grant of summary judgment in favor of defendants-appellees, Good Samaritan Hospital ("the Hospital"), Anesthesia Associates of Cincinnati, Inc.,[1] Shari Matvey, M.D., Anthony S. Cionni, M.D., and Terri Becker ("the Anesthesia defendants"), and Thomas Shrimpf, M.D. ("the surgeon"), on McCulley's claims for medical malpractice, negligence, misrepresentation, breach of contract, and fraud. For the reasons that follow, we hold that the claims for negligence, misrepresentation, and breach of contract, despite their captioning as separate counts, sound as a single count in medical malpractice, *Hibbett v. Cincinnati,*[2] and the grant of

---

1. The complaint contained no specific or separate allegations against this defendant. Presumably, this entity was sued on a respondeat superior basis as the billing or professional corporation of some or all of the Anesthesia defendants. No argument was raised by defense counsel on this point. An answer was filed on behalf of this corporation, and we presume its continued appearance in this case.

2. (1982), 4 Ohio App.3d 128, 4 OBR 220, 446 N.E.2d 832.

summary judgment is reversed on this single claim for relief as to all defendants, except Dr. Schrimpf. The fraud claim is a separate and independent claim for which summary judgment was properly granted as to all defendants.

## FACTS

On October 21, 1993, McCulley had same-day surgery performed at the Good Samaritan Hospital for removal of a lesion from his throat. The surgery was to be performed under general anesthesia. The preoperative consultation was done by Dr. Shari Matvey. The surgery, which was performed by Dr. Schrimpf, took about twenty-five minutes. Terri Becker, a nurse anesthetist, administered the anesthesia during the procedure. Dr. Matvey was Becker's supervisor for this procedure. In his deposition, McCulley testified that he had tried to tell Becker during the surgery that he was awake, but that he was unable to move or speak.

Immediately after the operation, McCulley told Becker that the anesthesia had not worked, and that he had been awake during the procedure. McCulley remembered that Becker apologized to him. Later an unidentified male anesthesiologist (identified in the medical record as a Dr. Berberich) was sent to explain what had happened, but McCulley did not feel that the man was being honest with him. McCulley was then released from the hospital.

The day after the surgery, Becker telephoned McCulley at home to see how he was and informed him that "they" were checking "the equipment." Several days after that, Dr. Cionni, who identified himself as an anesthesiologist, telephoned McCulley. Although Dr. Cionni suggested to McCulley that McCulley had experienced some kind of operative recall, a very rare occurrence, McCulley did not believe him.

Within the next week, McCulley had two inconclusive telephone conversations with the Hospital's Risk Management Department and a telephone call in which the attorney for Dr. Cionni offered a meeting, which McCulley declined. McCulley also requested his medical records from the Hospital and personally went to get them several weeks later. He apparently received only a partial set of records on this visit.

On May 17, 1994, McCulley's lawyer wrote a letter ("May 17 letter") to Good Samaritan Hospital, addressed not to any particular individual or department, but only "to whom it may concern." The letter first informed the Hospital that McCulley had been given some type of general anesthetic that failed to put him to sleep, and then requested McCulley's complete medical record and "both the serial numbers, as well as maintenance records of all equipment used on Mr. McCulley pertaining to anesthesia." Apparently, in response to the letter, a complete set of McCulley's hospital records was forwarded to his counsel. No

serial numbers or equipment maintenance records, however, were included. McCulley's attorney concluded, upon review by his experts of the materials provided, that nothing in the medical records provided the basis for any lawsuit against any of McCulley's health-care providers.

## LAWSUIT AGAINST DRUG MANUFACTURER

Having concluded that there was no basis for a claim against any of his health-care providers, and apparently still convinced that there had been a problem on the day of his surgery, McCulley filed suit against the manufacturer of desflurane, the anesthesia drug that he believed had not worked during his surgery. As part of the discovery process in this lawsuit, in January 1995, McCulley's lawyer issued a subpoena to the Good Samaritan Hospital requesting information about the anesthesia equipment used during McCulley's surgery. In response, in February 1995, McCulley's counsel received an investigative report ("Ohmeda report") from Ohmeda, the manufacturer of the equipment that delivered the desflurane. The report showed October 22, 1993, as the date of notification, listed Becker, the nurse anesthetist, as the "hospital personnel" involved in the alleged incident, and listed Cionni and Becker as the contacts at the hospital. This report documented equipment failure the day of McCulley's surgery and indicated that a full reservoir of desflurane remained in the machine after the surgery. The report was signed by two Ohmeda on-site service representatives and was dated October 26, 1993. It indicated that at least one responsible hospital representative was to be present for the investigation, but it is not clear who that was.

On December 15, 1995, McCulley filed the instant suit against the Hospital, the Anesthesia defendants, and the surgeon.

## STATUTE OF LIMITATIONS

## MOTION FOR SUMMARY JUDGMENT

All defendants in this case moved for summary judgment, arguing that the one-year statute of limitations for medical claims had run and that there were no other surviving claims. All defendants contended that McCulley suspected equipment failure as the cause of his injury as early as October 21, 1993, the day of the surgery itself, and that, as a result, the statute began to run immediately. Thus, they argued that McCulley's suit, filed December 15, 1995, was untimely. McCulley argued that he had nothing to put him on notice of the cause of his injury until he received the Ohmeda report in February 1995, and that once he had that information, he timely filed suit.

Both the material facts and the law in this case are uncontroverted. The only issue is the application of the law to the facts. Applying the law to the facts, the trial court concluded the statute of limitations had run and granted summary judgment to the defendants.[3]

## LEGAL ANALYSIS

### A. Medical Claim

The only assignment of error McCulley raises is that the trial court erred in granting summary judgment on the statute of limitations.[4] As stated above, there really are no factual disagreements among the parties. It is undeniable that McCulley suspected something was wrong on the day of the surgery itself. Additionally, the next day, the nurse anesthetist told him the equipment was being examined. McCulley's medical chart, which he received well within a year of the incident, contained the following notation:

"10/21/93 Anesthesiology

"Patient experienced operative recall; Extensive discussion held with Mr. McCulley regarding this infrequent complication to his satisfaction. O.R. Equipment will be checked to assess vaporizer function (had been used for two other anesthetics this A.M. without untoward events)."

The doctor's signature under this notation was illegible. Despite this notation, other portions of the anesthesia record showed that McCulley did receive desflurane during the surgery.

There is also no real disagreement among the parties about the applicable law in the case. A plaintiff in a medical malpractice action has one year to file suit.[5] R.C. 2305.11. The year begins to run upon the happening of a "cognizable event," defined in the syllabus of *Allenius v. Thomas* [6] as that which does or should lead the patient to believe that the condition that the patient complains of is related to a medical procedure previously rendered to the patient. Again, there is no dispute that McCulley was suspicious the day of the surgery

---

3. The trial court did not separately analyze the claims other than the malpractice claim, concluding in its entry that the statute had run as to "all claims." We take this to mean the trial court concluded, as do we, that, despite different counts in the complaint, all claims for relief other then fraud really sounded in malpractice.

4. McCulley incorrectly raises only *issues* rather than assignments of error for our review. However, it is clear that McCulley is arguing that the trial court erred in granting summary judgment. Counsel would be well advised to study the correct briefing form.

5. R.C. 2305.11.

6. (1989), 42 Ohio St.3d 131, 538 N.E.2d 93.

and that his suspicions were initially focused on one of the anesthetic agents and/or the equipment. Further, the October 23 anesthesia note, offered by the defendants in support of their motion for summary judgment, and undisputedly received by McCulley early on, undeniably gave notice that there may have been a problem with the equipment. If that were all there were to this matter, we would agree with the trial court that the statute had run. But it is not all there is.

The rest of the test in *Allenius* requires that "the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Id.* at syllabus. McCulley's lawyer sent a letter May 17, 1994, following up on McCulley's suspicion about equipment failure by asking for specific information about the equipment used during the surgery. No party disputes the fact that, in response to this letter, the Hospital forwarded a copy of McCulley's chart, but did not include the Ohmeda report.

For purposes of the statute-of-limitations argument, we will separate the Hospital's arguments from the arguments of the Anesthesia defendants.

The Hospital argues that after receiving the medical records in response to the May 17 letter, McCulley made no other attempt to obtain any equipment maintenance records during the remaining statutory period. At oral argument, counsel for the Hospital also argued that this information was within the purview of the anesthesia department, a group independent of and not employed by the Hospital, and that a patient could not expect the medical-records department to have or to obtain this information. We reject both arguments.

Our review of the record and counsel's arguments leads us to the conclusion that the Hospital·failed to respond appropriately to McCulley's May 17 letter, with the result that McCulley was misled as to the nature of the remedies he needed to pursue. The Hospital had a duty to disclose this information to the patient once it was asked. We agree with the statement of public policy in *Leach v. Shapiro* [7] that because of the staggering technological advances in medicine, the disparity in expertise between doctor and patient has dramatically increased. Thus, the "importance of adequate disclosure increases as the patient is placed at a greater informational disadvantage." *Id.*[8] Further, if the information requested by the patient was under the control of a department independent of the hospital, it was the duty of the hospital either to get it or to direct the patient specifically to the appropriate place where it could be obtained. The ordinary

---

7. (1984), 13 Ohio App.3d 393, 13 OBR 477, 469 N.E.2d 1047, cited with approval in *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709.

8. 13 Ohio App.3d at 398, 13 OBR at 482–483, 469 N.E.2d at 1054.

patient is not required to know that departments like the emergency room, anesthesia, and radiology are wholly separate from the hospital, especially in today's climate of "full service" hospitals competing for business. As stated by the Supreme Court of Ohio in *Clark v. Southview Hospital:* [9]

"With hospitals now being complex full-service institutions, the emergency room has become the community medical center, serving as the portal of entry to the myriad of services available at the hospital. As an industry, hospitals spend enormous amounts of money advertising in an effort to compete with each other for the health care dollar, thereby inducing the public to rely on them in their time of medical need. The public, in looking to the hospital to provide such care, is unaware of and unconcerned with the technical complexities and nuances surrounding the contractual and employment arrangements between the hospital and various medical personnel operating therein."[10]

In this case, the Hospital's attempt to blame the patient for not following up on the anesthesia equipment within the statutory period is all the more remarkable when the Hospital's lawyer made an affirmative representation at McCulley's deposition that the Hospital did not learn of the Ohmeda report and the findings of that report until early 1995. Suffice it to say that if the Hospital only then learned of the report, this court does not intend to charge McCulley with any earlier knowledge.

As far as the Anesthesia defendants are concerned, the Ohmeda investigation report indicated that the company was notified of the equipment-failure incident on October 22, 1993, and this was verified by two Ohmeda on-site investigators on October 26, 1993. The contacts at the hospital were identified as Dr. Cionni and Nurse Anesthetist Becker. The report indicates that at least one responsible hospital representative was to be present for the investigation. And yet, according to McCulley's deposition, several days after the surgery (the record is unclear when), in a telephone call, Dr. Cionni led McCulley in the direction of "operative recall" and away from equipment failure.

While we are not willing to go as far as McCulley urges and conclude that the defendants fraudulently concealed this information from him, we do hold that, by their actions and inactions, the defendants misled McCulley about his appropriate remedies. Construing the evidence most strongly in McCulley's favor, as we

---

**9.** (1994), 68 Ohio St.3d 435, 444, 628 N.E.2d 46, 53.

**10.** McCulley's understanding of this was typical. When asked in his deposition whom "at the hospital" he was angry at, he answered Dr. Cionni. The hospital's attorney stated that Dr. Cionni was not a hospital employee, nor was nurse Becker, and that he just wanted to "focus specifically on people who are employed by Good Samaritan Hospital." McCulley's answer was "Well, I don't understand the question then, you need to clarify that for me."

must with a summary-judgment motion adverse to him, we thus hold that the statute of limitations did not begin to run until McCulley received the Ohmeda report, and thus that his malpractice claim was timely filed.

## B.  Fraud Claim

■  In the first syllabus paragraph of *Gaines v. Preterm–Cleveland, Inc.,*[11] the Supreme Court held:

"A physician's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relies to his detriment, may give rise to a cause of action in fraud independent from an action in medical malpractice."

■  McCulley urges us to recognize such a claim in this case independent of his malpractice claim.  We decline to do this and hold that, on the record presented, the misleading actions only tolled the statute of limitations and did not, on these facts, create a separate claim for fraud.

The summary judgment granted by the trial court in favor of all defendants is affirmed as to a separate claim for fraud, but reversed on the malpractice claim as to all defendants except Dr. Schimpf.  The matter is remanded for further proceedings on the malpractice claim.

*Judgment affirmed in part,*
*and reversed in part*
*and cause remanded.*

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.

---

11.  (1987), 33 Ohio St.3d 54, 514 N.E.2d 709.