WERLING, ADMX., APPELLANT, *v.* SANDY ET AL., APPELLEES.

[Cite as Werling *v.* Sandy (1985), 17 Ohio St. 3d 45.]

(No. 84-814—Decided April 24, 1985.)

*Huffman, Landis & Weaks, Robert J. Huffman, Jose M. Lopez* and *Raymond L. Landis,* for appellant.

*Gooding, Evans & Huffman* and *C. Bradford Kelley,* for appellees Drs. Sandy and Thompson and Lima Group Family Physicians.

*Oxley, Malone, Fitzgerald & Hollister* and *Michael J. Malone,* for appellee Lima Memorial Hospital.

*Iler & Ellerin* and *Don C. Iler,* urging reversal for *amicus curiae* Ohio Academy of Trial Lawyers.

*Condit & Dressing Co., L.P.A., James J. Condit* and *Steven F. McDowell,* urging reversal for *amicus curiae* Catholic League for Religious and Civil Rights.

HOLMES, J. Today, this court is confronted with the certified issue of whether an action for wrongful death exists under R.C. 2125.01 where the decedent was a stillborn fetus. More specifically, we are asked to determine whether the statutory beneficiaries of an unborn fetus are entitled to damages for the wrongful death of the fetus where both the alleged negligently inflicted injury and death of the child occurred before birth. To resolve this issue necessarily requires an answer to the question of whether an unborn fetus which dies *en ventre sa mere*[3] may be considered a "person" for the purposes of the statute under consideration. For the reasons which follow, we answer each of the above queries affirmatively as long as it is established that the fetus was viable at the time of its injury.

An action for wrongful death did not exist at common law. The right to bring such an action, however, was conferred by the General Assembly in R.C. 2125.01 and is the only civil remedy available to compensate surviving beneficiaries. *Karr* v. *Sixt* (1946), 146 Ohio St. 527 [33 O.O. 14]; *Keaton* v. *Ribbeck* (1979), 58 Ohio St. 2d 443 [12 O.O.3d 375].

R.C. 2125.01 provides in pertinent part:

---

[3] *"En ventre sa mere"* is a term descriptive of an unborn child which means "in its mother's womb." Black's Law Dictionary (5 Ed. 1979) 479.

"When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages * * *."

The clear purpose of the wrongful death statute is to provide a remedy whenever there would have been an action in damages had death not ensued. The provision is remedial in nature and was designed to alleviate the inequity perceived in the common law.

In addition, an action for wrongful death is for the exclusive benefit of the statutory beneficiaries. It is rebuttably presumed within the statute that each beneficiary has suffered damages by reason of the wrongful death. R.C. 2125.02. In the present situation, it is the parents who suffer mental anguish and the loss of society *inter alia* due to the death of their child. Our decision is directed to justly compensate those parents for the loss of parenthood.

The rights of an unborn child are no strangers to our law, even though this precise question is one of first impression. The intestate rights of a posthumous child are recognized in R.C. 2105.14. A child in gestation who is subsequently born alive may be considered a life in being throughout the gestation period for purposes of the now statutory rule against perpetuities. R.C. 2131.08(A); *Phillips* v. *Herron* (1896), 55 Ohio St. 478. The definition of "decedent" within the Uniform Anatomical Gift Act includes a stillborn infant or fetus. R.C. 2108.01(B). And, finally, under the Uniform Parentage Act, the personal representative of an unborn child may bring an action on behalf of the infant to establish a father-child relationship. R.C. 3111.04.

While the cause of action herein is statutory, certain common-law decisions of this court assist our resolution of the issue presented. In *Williams* v. *Marion Rapid Transit, Inc.* (1949), 152 Ohio St. 114 [39 O.O. 433], the issue before the court was whether a living child injured *en ventre sa mere* was entitled to be heard as a "person" within Section 16, Article I of the Ohio Constitution.[4] In recognizing that the child possessed an action for injuries negligently inflicted during gestation, Judge Matthias, writing for a unanimous court, stated at 128-129:

"To hold that the plaintiff [child] in the instant case did not suffer an injury in her person would require this court to announce that as a matter of law the infant is a part of the mother until birth and has no existence in law until that time. In our view such a ruling would deprive the infant of

---

[4] This section provides:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

the right conferred by the Constitution upon all persons, by the application of a time-worn fiction not founded on fact and within common knowledge untrue and unjustified."

This court has also recognized the validity of a wrongful death action on behalf of a child who was born alive but died shortly thereafter as a result of prenatal injuries. In *Jasinsky* v. *Potts* (1950), 153 Ohio St. 529 [42 O.O. 9], it was held in the syllabus that "[u]nder the wrongful-death statute * * * the administrator of the estate of a child who, while viable, suffered a prenatal injury through the alleged negligent act of another and who died approximately three months after its birth as a result of such injury has a cause of action against such other for damages for the benefit of the parents of such infant."

Using these past decisions as a foundation, we are of the opinion that a cause of action may arise under the wrongful death statute when a viable fetus is stillborn since a life capable of independent existence has expired. It is logically indefensible as well as unjust to deny an action where the child is stillborn, and yet permit the action where the child survives birth but only for a short period of time. The requirement of birth in this respect is an artificial demarcation. As hypothetically stated by the court of appeals in *Stidam, supra* (109 Ohio App. 431 [11 O.O.2d 383]), at 434:

"* * * Suppose, for example, viable unborn twins suffered simultaneously the same prenatal injury of which one died before and the other after birth. Shall there be a cause of action for the death of one and not for that of the other? Surely logic requires recognition of causes of action for the deaths of both, or for neither."

To allow a cause of action where it is established that the fetus was viable certainly furthers the remedial nature of the wrongful death statute. To hold otherwise would only serve to reward the tortfeasor by allowing him to escape liability upon an increase in the severity of the harm, if such harm results in death to the child. In other words, the greater the harm inflicted, the better the opportunity that a defendant will be exonerated. This result is clearly not acceptable under the statute.

We recognize that our adoption of the viability test will present some practical problems. The term "viability" is an elusive one since not all fetuses arrive at this stage of their development at an identical chronological point in their gestation. The concept may also become increasingly difficult to apply with further developments surrounding the sophisticated medical techniques which allow a child to be conceived outside the mother's womb. Indeed, some commentators have questioned the standard and suggest the adoption of a causation test which permits recovery for an injury sustained by a child at any time prior to his birth if it can be proven that the injury was the proximate result of a wrongful act.[5] However, for the purposes of this appeal, we believe the better

---

[5] Notes, Tort Recovery for the Unborn Child (1976-1977), 15 J. Fam. L. 276; Note, The Law and the Unborn Child: The Legal and Logical Inconsistencies (1971), 46 Notre Dame

reasoned view is to recognize the viable child as a person under the statute rather than to designate the same status to a fetus incapable of independently surviving a premature birth.

A review of decisions from other jurisdictions clearly supports our conclusion. At least twenty-five jurisdictions allow a wrongful death action for the death of a viable fetus; whereas, only nine states preclude such an action. In addition, one jurisdiction has adopted the causation test, and another merely requires the fetus to be quick,[6] while Indiana is the only jurisdiction which requires that a child be full-term before an action exists. See cases contained in Annotation (1978), 84 A.L.R. 3d 411.

We are also cognizant that the United States Supreme Court has held that a fetus is not a person for the purpose of the Fourteenth Amendment, and that states may not enact statutes which prohibit abortions during the first trimester of pregnancy. *Roe* v. *Wade* (1973), 410 U.S. 113. However, the court recognized in *Roe* that once a fetus becomes viable, a state may prohibit all abortions except those necessary to preserve the life or health of the mother and that "* * * [s]tate regulation protective of fetal life after viability * * * has both logical and biological justifications." *Id.* at 163. The court found the compelling point in the state's legitimate interest of protecting potential life to be at viability, as the fetus, at that time, has the capability of meaningful life outside the mother's womb. It follows, therefore, that our decision is entirely consistent with *Roe* to the effect that a viable fetus is a person entitled to protection and may be a basis for recovery under the wrongful death statute.

Finally, appellees contend that *State* v. *Dickinson* (1971), 28 Ohio St. 2d 65 [57 O.O.2d 255], is dispositive of this appeal. We disagree.

In *Dickinson,* it was held in paragraph two of the syllabus that a viable unborn fetus is not a person within the meaning of this state's former vehicular homicide statute, R.C. 4511.181. It is undisputed, however, that criminal statutes are strictly construed against the state and liberally interpreted in favor of the accused. R.C. 2901.04; *Harrison* v. *State* (1925), 112 Ohio St. 429, 442, affirmed (1926), 270 U.S. 632. In fact, *Dickinson* recognizes "* * * that the definition of a word in a civil statute does not necessarily import the same meaning to the same word in interpreting a criminal statute." *Id.* at 70. Therefore, we find the *Dickinson* case not to be controlling under the facts as presented herein.

Accordingly, we hold that a viable fetus which is negligently injured *en ventre sa mere,* and subsequently stillborn, may be the basis for a wrongful death action pursuant to R.C. 2125.01.

---

Law. 349, 358; Note, The Impact of Medical Knowledge on the Law Relating to Prenatal Injuries (1962), 110 U. Pa. L. Rev. 554, 563. See, generally, Prosser & Keeton, Law of Torts (5 Ed. 1984) 367, Section 55.

[6] The term "quick" refers to the point in prenatal development at which time a fetus is able to move in its mother's womb. Black's Law Dictionary (5 Ed. 1979) 1122.

The judgment of the court of appeals is hereby reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, FORD, C. BROWN and WRIGHT, JJ., concur.

DOUGLAS, J., concurs separately.

FORD, J., of the Eleventh Appellate District, sitting for LOCHER, J.

DOUGLAS, J., concurring. While I agree with the holding of the majority, I am troubled with what appears to be the open-endedness of the decision. In my judgment it would be the better policy of this court to say that for purposes of suit in Ohio, under the wrongful death statute, viability of an unborn child occurs at a time certain during pregnancy. I deem it important that we be precise in our decision and thereby send to the bench and bar under our jurisdiction a clear message. To do otherwise, it seems to me, will be to encourage the filing of multifarious actions to determine, in a descending manner, what this court means as to when viability occurs. Today's case says a full-term pregnancy. Tomorrow's case could be a pregnancy of seven months, then six months and, after that, five months, and so forth.

In addition, I find that the breadth of today's decision will present some very difficult questions, not only for lawyers who advise their clients, but for doctors, organizations and individuals who are concerned with the question in relationship to *Roe* v. *Wade* (1973), 410 U.S. 113.