**EGAN, Admr., Appellant,**

**v.**

**SMITH et al., Appellees.**

[Cite as *Egan v. Smith* (1993), 87 Ohio App.3d 763.]

Court of Appeals of Ohio,
Huron County.

No. H–92–017.

Decided July 23, 1993.

*George A. Howells,* for appellant.

*Janis L. Small, Jean M. O'Brien* and *Nancy D. Moody,* for appellees.

*Per Curiam.*

This case is before the court on appeal from a judgment of the Huron County Court of Common Pleas. That court granted the motion for partial summary judgment of defendants-appellees Thomas Eaton, M.D.; M.R. Smith, M.D.; Donald Shanabrook, M.D.; and Bellevue Hospital[1]; and dismissed plaintiff-appellant's wrongful death claim.[2] Appellant, Darlene Kay Egan, administrator of the estate of Baby Girl Egan, appeals that judgment. She does not set forth an assignment of error but argues that Ohio should permit the maintenance of a wrongful death action on behalf of the beneficiaries of a nonviable fetus.

Civ.R. 56(C) provides, in part:

"(C) Motion and Proceedings Thereon. The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party prior to the day of hearing may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

1. Appellant voluntarily dismissed Bellevue Hospital from this appeal on July 15, 1992.

2. Appellant's medical malpractice action against appellees remains pending in the court below.

judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

■ The party moving for summary judgment has the burden of stating a specific basis for the motion and offering evidence in support of that basis. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. The nonmoving party is then forced to produce evidence on which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

In the present case, appellees and Bellevue Hospital filed motions[3] for partial summary judgment in which they asserted that Ohio law does not allow a cause of action based upon the alleged wrongful death of a nonviable fetus. The materials offered in support of the motions for summary judgment disclose the following relevant undisputed facts.

The certified medical record of Fisher–Titus Hospital reveals that on March 18, 1988, Darlene Egan delivered a twenty-one week *stillborn* female fetus which weighed three hundred twenty grams (eleven and one-half ounces). In his affidavit, Steven M. Donn, M.D., a neonatal-perinatal specialist, averred:

"4. I have reviewed and base my opinion on findings in the medical records concerning Darlene M. Egan's March 18, 1988 delivery.

"5. In my opinion to a reasonable degree of medical probability, the Egan fetus, which weighed 320 grams (approximately 11 ounces) and was spontaneously delivered on March 18, 1988, was not a viable fetus under any definition of viability."

Dr. Shanabrook, in his affidavit, stated that, in his opinion, the "unborn fetus was in the twenty-first week of gestation and as such was not a viable fetus."

■ In Ohio, a wrongful death action is brought on behalf of the statutory beneficiaries of a decedent for wrongful conduct in causing the death of that "person." R.C. 2125.01; *Werling v. Sandy* (1985), 17 Ohio St.3d 45, 47, 17 OBR 37, 39, 476 N.E.2d 1053, 1054. In *Werling,* the Supreme Court of Ohio held that a viable fetus which is negligently injured "en ventre sa mere" (in its mother's

---

**3.** Bellevue Hospital and the named defendant physicians filed separate motions for summary judgment and asserted identical grounds for those motions.

womb) and subsequently stillborn, may be the basis for a wrongful death action pursuant to R.C. 2125.01 *et seq.* That is, such a child is a "person" within the meaning of Ohio's wrongful death statute. However, the court also held in order for a wrongful death action to lie, the viability of the fetus at the time of the injury must be established. *Id.* at 47, 17 OBR at 39, 476 N.E.2d at 1054. In reaching its holding, the court declined to set a definitive stage at which a fetus can be considered viable. Rather, the court recognized the flexibility of the concept of viability and the effect of modern technology upon perinatal and neonatal survival rates. *Id.* at 48, 17 OBR at 40, 476 N.E.2d at 1055. Nevertheless, "viability" has consistently been defined as the capability of the fetus to independently survive outside the mother's womb. *Id.* at 49, 17 OBR at 41, 476 N.E.2d at 1056; *Williams v. Marion Rapid Transit* (1949), 152 Ohio St. 114, 39 O.O. 433, 87 N.E.2d 334, syllabus. A fetus is often regarded as achieving viability between the twenty-fourth and twenty-eighth week of pregnancy. *Roe v. Wade* (1973), 410 U.S. 113, 160, 93 S.Ct. 705, 730, 35 L.Ed.2d 147, 181. Generally, however, viability may vary with each pregnancy. Thus, a determination of whether a particular fetus is viable is a matter of judgment for the medical profession. *Planned Parenthood of Cent. Missouri v. Danforth* (1976), 428 U.S. 52, 64, 96 S.Ct. 2831, 2838, 49 L.Ed.2d 788, 802 (determination of viability for purpose of abortion).

In the case under consideration, appellant concedes that Baby Girl Egan was a nonviable fetus. She urges this court, however, to adopt a test which does not depend upon the viability of a fetus. See, *e.g., Porter v. Lassiter* (1955), 91 Ga.App. 712, 87 S.E.2d 100 (applying the "quickness" test which allows maintenance of a wrongful death action if the fetus is "quick" or capable of movement in the womb). This is not the law of Ohio or of a vast majority of the states ·which permit wrongful death actions based upon the death of an unborn child. See Annotation, Right to Maintain Action or to Recover Damages for Death of Unborn Child (1978 & Supp.1991) 432–446, Section 4[a]. See, generally, Note, Protection of Prenatal Life Through Wrongful Death Statutes (1989), 15 U. Dayton L.Rev. 157, 161–162. We therefore decline to adopt the approaches suggested by appellant and leave such a decision to the Supreme Court of Ohio or to our state legislature. See, *e.g., Webster v. Reproductive Health Serv.* (1989), 492 U.S. 490, 494, 109 S.Ct. 3040, 3044, 106 L.Ed.2d 410, 421 ("there is * * * no reason why the State's compelling interest in protecting human life should not extend throughout pregnancy rather than coming into existence only at the point of viability").

As to the instant cause, the fact of the nonviability of the Egan fetus was established by appellees. Appellant conceded that the fetus was, indeed, nonvia-

ble.[4] Therefore, no genuine issue of material fact existed as to whether that fetus was not a "person" within the meaning of R.C. 2125.01. Thus, appellant is precluded from maintaining a wrongful death action on the behalf of the statutory beneficiaries of the nonviable fetus as a matter of law. The trial court did not err in·granting appellees' motion for partial summary judgment. Appellant's assertions are found not well taken.

On consideration whereof, the court finds substantial evidence that justice was done the party complaining, and the judgment of the Huron County Court of Common Pleas is affirmed. Costs of this appeal assessed to appellant.

*Judgment affirmed.*

HANDWORK, ABOOD and MELVIN L. RESNICK, JJ., concur.

---

4. Despite appellant's assertions to the contrary, the record of this cause contains no evidence that a "living" child was delivered on March 18, 1988. The medical record of Fisher–Titus Hospital discloses that a fetal heart tone was obtained prior to delivery. That same record states unequivocally, however, that the child was stillborn, that is, was "dead at birth," Webster's Ninth New Collegiate Dictionary (1990) 1158.