WALKER et al., Appellants,

v.

FIRELANDS COMMUNITY HOSPITAL et al., Appellees.

[Cite as *Walker v. Firelands Community Hosp.*, 170 Ohio App.3d 785, 2007-Ohio-871.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–06–023.

Decided March 2, 2007.

Michael T. Murray, John T. Murray, and Steven C. Bechtel, for appellant Joanna Hayth.

James R. Knepp II and Paul D. Eklund, for appellees Firelands Community Hospital et al.

Jeanne M. Mullin, for appellee Patricia Lukas.

HANDWORK, Judge.

{¶ 1} In this third appeal of a class action,[1] appellant Joanna Hayth,[2] as the representative of the class, asserts that the following errors occurred in the proceedings below:

---

1. See *Walker & Hayth v. Firelands Community Hosp.*, 6th Dist. No. E–03–009, 2004-Ohio-681, and *Walker v. Firelands Community Hosp.* (Oct. 5, 2001), 6th Dist. No. E–01–006, 2001 WL 1198660.

2. Firelands Community Hospital insists that Hayth is the only representative of the class because she is the sole named representative in appellant's motion to certify. We agree. In

{¶ 2} "1. The trial court erred by granting summary judgment in favor of appellees on Count One (violation of statutes and regulations)."

{¶ 3} "2. The trial court erred by granting summary judgment in favor of appellees on Count Two (the common law tort of mishandling a corpse, body or fetus a.k.a. the right of sepulcher)."

{¶ 4} "3. The trial court erred by granting summary judgment in favor of appellees on Count Three (fraud by omission)."

{¶ 5} "4. The trial court erred by granting summary judgment in favor of appellees on Count Four (negligent infliction of emotional distress)."

{¶ 6} Hayth alleges that she had a miscarriage at appellee Firelands Community Hospital ("Firelands"), sometime between the years 1988 through 1996. She was told by her physician that the "fetus"[3] of 20 weeks or less of gestation would be cremated. It is uncontroverted that during that period, it was hospital policy to dispose of all tissue by means of a tissue grinder or incineration. The tissue included the tissue of fetuses at or less than 20 weeks of gestation[4] that were the result of a miscarriage or were stillborn.

{¶ 7} During that same time period, appellee Patricia Lukas was employed by Firelands as a histologist technician in the hospital's morgue. Lukas, for personal reasons based upon her religious beliefs, decided to keep intact fetal specimens in containers filled with formalin. She stored them on shelves used to retain tissue for teaching purposes. Approximately 88 specimens of fetal tissue were commingled in the same three containers for different time periods lasting up to ten years.

{¶ 8} The deposition testimony of both Mary Lloyd, a licensed medical technician, and Lukas revealed the procedure followed when the lab received any type

---

the first appeal of this case, we noted that Hayth was the only named representative of the class and discussed the merits of the certification issue only in relationship to her. See *Walker v. Firelands Community Hosp.* at 4.

**3.** The term "fetus" is generally applied only to a developing human after two months of gestation. *Merriam–Webster Online Dictionary* at http://www.merriam-webster.com (Jan. 2, 2004). An "embryo" refers to a developing human before two months of gestation. *Merriam–Webster Online Dictionary* at http://www.merriam-webster.com (Jan. 2, 2004). Keeping in mind that the fetal tissue in this cause may, when the members of the class are determined, have been that of either a fetus or an embryo, we shall, however, use the term "fetus," when necessary, for ease of discussion.

**4.** This figure is important because the definition of "fetal death" in the Ohio Revised Code includes only a product of human conception of at least 20 weeks of gestation that after expulsion or extraction shows no signs of life. R.C. 3705.01(B)(1). The term "stillborn" is defined as an infant who suffered fetal death. R.C. 3705.01(B)(2).

of tissue specimen, including fetal tissue. Lukas would bring the specimens to the morgue, which is on the same floor as the histology room. The tissue specimens were preserved in containers of formalin or formaldehyde and labeled with, among other things, the patient's name and a hospital number. A pathologist would then remove sections of the specimen for analysis. The remaining tissue was returned to its container and stored on a shelf until such time that the pathologist told the technicians to dispose of that tissue. According to Lloyd, only small tissue specimens were disposed of by means of the tissue grinder. Larger specimens, such as intact fetuses, were supposed to be drained, bagged, and incinerated.

{¶ 9} In October 1996, Firelands learned that Lukas was storing the fetuses and terminated her employment. The fetuses were then destroyed pursuant to hospital policy.[5] However, in November 1996, the media were made aware of Lukas's actions and reported the story in the newspaper, on the radio, and on television.

{¶ 10} In early 1997, this class action was commenced against Firelands and Lukas by women who had been treated for a miscarriage or had a stillborn fetus at Firelands during the relevant time period. In an amended complaint, appellant set forth the following claims: (1) violation of Ohio statutes and regulations governing unlawful possession of a dead body and those regulations governing the humane disposal of a fetus, (2) the common law tort of mishandling a body or corpse (appellant also added "fetus" in this claim), (3) fraud by omission (raised against Firelands only), (4) negligent infliction of emotional distress, (5) intentional infliction of emotional distress, and (6) a claim for punitive damages.

{¶ 11} The first two appeals of the case at bar involved class certification and did not, therefore, address the merits of appellant's claims. After our last remand of this cause to the trial court, Lukas filed a motion for a partial judgment on the pleadings and a motion for summary judgment on all counts in appellant's complaint. Firelands also filed a motion for a judgment on the pleadings on all counts in that complaint.

{¶ 12} On February 27, 2006, the trial court filed a lengthy decision in which it stated that it did not limit "its review to only the pleadings, but instead also reviewed the affidavits and other exhibits supplied by counsel." The court therefore rendered its opinion "in terms of a motion for summary judgment and

---

5. The hospital's expert, Robert W. Bendon, a perinatal pathologist, averred that "[i]t has always been standard practice to treat any and all products of human conception, including a fetus, however described, which is less than twenty weeks gestation, as medical specimens which are used up by pathological examination and/or disposed of by way of a mechanical or electrical disposer and drain, or by way of incineration." This was the method used by Firelands.

not a judgment on the pleadings." The trial judge found that no genuine issue of material fact existed on counts 1 through 4, as listed above, and dismissed those claims with prejudice. The judge did, however, find that genuine issues of material fact existed on the question of whether the class members could recover on their claim based upon intentional infliction of emotional distress. Therefore, he denied the motion for summary judgment and the motions for a judgment on the pleadings with regard to the fifth (intentional infliction of emotional distress) and sixth (punitive damages) claims.

{¶ 13} Appellant filed a motion for reconsideration asking the court to, at the least, restore the claim based upon the common law tort of mishandling a body or corpse. Notably, appellant never questioned the trial court's treatment of the motions for a judgment or partial judgments on the pleadings as part and parcel of the motion for summary judgment. Furthermore, she does not argue on appeal that the trial court erred by, in essence, converting the Civ.R. 12(C) motions to motions for summary judgment without informing the parties of its intention to do so. See *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165–166, 63 O.O.2d 262, 297 N.E.2d 113 (a Civ.R. 12(C) motion for a judgment on the pleadings presents a question of law, therefore allowing a trial court to consider only the allegations in the pleadings unless the court informs the parties of its intent to convert the motion to one requesting summary judgment). Accordingly, we conclude that appellant's failure to address this issue in the lower court constituted waiver. See *Minshall v. Cleveland Illum. Co.*, 11th Dist. No. 2004–L–156, 2006-Ohio-2241, 2006 WL 1214795, ¶ 19. Consequently, we shall utilize the standard employed by appellate courts in determining whether a trial court erred in granting summary judgment to the present case.

{¶ 14} Appellate courts review the grant of summary judgment de novo, applying the same standard used by the trial court. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court reviews the same evidence that was properly before the trial court. *Am. Energy Servs., Inc. v. Lekan* (1992), 75 Ohio App.3d 205, 208, 598 N.E.2d 1315. Summary judgment is proper if there is no genuine dispute of a material fact, so that the issue is a matter of law, and reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 15} In her first assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of Firelands and Lukas on the first count in her amended complaint. In that count, appellant alleged that appellees violated R.C. 1713.39 and 3701.341, as well as Ohio Adm.Code 3701–47–05, by using a tissue grinder to dispose of the fetus and/or by keeping the fetus commingled with others in containers.

{¶ 16} R.C. 1713.39 reads:

{¶ 17} "A person, association, or company, having unlawful possession of the body of a deceased person shall be jointly and severally liable with any other persons, associations, and companies that have had unlawful possession of such body, in any sum not less than five hundred nor more than five thousand dollars, to be recovered at the suit of the personal representative of the deceased."

{¶ 18} Because she argues that the viability of a fetus has nothing to do with her claims of emotional distress, appellant asserts that the trial court mistakenly relied on the definition of "viability" developed in *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, to determine whether the fetus in this cause could be considered the "body of a deceased person" within the meaning of R.C. 1713.39. We disagree.

{¶ 19} In interpreting a statute, words and phrases must be read in context "and construed according to the rules of grammar and common usage." R.C. 1.42. Words that have acquired a particular meaning, either "by legislative definition or otherwise, shall be construed accordingly." Id.; *Hedges v. Nationwide Mut. Ins. Co.*, 109 Ohio St.3d 70, 2006-Ohio-1926, 846 N.E.2d 16, ¶ 24.

{¶ 20} Within the context of the present case, the trial court was required to decide whether a fetus of 20 weeks or less of gestation was a "person" within the meaning of R.C. 1713.39. In ascertaining this meaning, the court below could, therefore, consider the definition of "person" as developed in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, and its progeny.

{¶ 21} The specific issue addressed by the United States Supreme Court in *Roe v. Wade* was the constitutionality of a Texas statute that criminalized abortion. Id. at 116, 93 S.Ct. 705, 35 L.Ed.2d 147. In addressing this issue, the court was required to determine whether a fetus could be considered a "person" within the meaning of the Fourteenth Amendment to the United States Constitution and concluded that "the word 'person' does not include the unborn." Id. at 158, 93 S.Ct. 705, 35 L.Ed.2d 147. The viability of a fetus was discussed only as to the restrictions that the state could impose subsequent to the ability of a fetus to survive outside the womb. Id. at 164–165, 93 S.Ct. 705, 35 L.Ed.2d 147.

{¶ 22} In the instant case, the trial court quoted the foregoing language, as well as numerous other references in *Roe* that would indicate that a fetus is not a "person" and found that it could not disregard the ruling in *Roe* by defining "fetus" (at or under 20 weeks of gestation) as a "person." Therefore, the trial court, as a matter of law, properly referred to *Roe* in determining the meaning of "person" in R.C. 1713.39.

{¶ 23} Appellant next claims that the trial court erred by granting summary judgment on the first count in her complaint because R.C. 3701.341(A)(4) and Ohio Adm.Code 3701–47–05 impose a duty (standard of care) on the hospital and Lukas to humanely dispose of "the product of human conception." The trial judge found that this statutory section and regulation applied only to abortion clinics and abortions.

{¶ 24} R.C. 3701.341 is titled "Public Health Council Rules on Abortion" and reads:

{¶ 25} "(A) The public health council, pursuant to Chapter 119, and consistent with section 2317.56 of the Revised Code, shall adopt rules relating to abortions and the following subjects:

{¶ 26} "(1) Post-abortion procedures to protect the health of the pregnant woman;

{¶ 27} "(2) Pathological reports;

{¶ 28} "(3) Humane disposition of the product of human conception;

{¶ 29} "(4) Counseling.

{¶ 30} "(B) The director of health shall implement the rules and shall apply to the court of common pleas for temporary or permanent injunctions restraining a violation or threatened violation of the rules. This action is an additional remedy not dependent on the adequacy of the remedy at law."

{¶ 31} Ohio Adm.Code Chapter 3701–47–05 provides:

{¶ 32} "Humane disposition of the product of conception

{¶ 33} "(A) The fetus shall be disposed of in a humane manner.

{¶ 34} "(B) No person shall experiment upon or sell the product of human conception which is aborted. Experiment does not include autopsies pursuant to sections 313.13 and 2108.50 of the Revised Code."

{¶ 35} Appellant focuses on the phrase "shall adopt rules relating to abortions *and the following subjects* " to argue that the humane disposition of a product of human conception does not apply solely to those that result from abortions. Again, we must disagree.

{¶ 36} Our primary duty in construing a statute is to give full effect to the legislature's intent. *Humphrys v. Winous Co.* (1956), 165 Ohio St. 45, 49, 59 O.O. 65, 133 N.E.2d 780, citing *Cochrel v. Robinson* (1925), 113 Ohio St. 526, 149 N.E. 871; *Hahn v. Satullo,* 156 Ohio App.3d 412, 2004-Ohio-1057, 806 N.E.2d 567, ¶ 38. In determining intention, a court considers the language used and the purpose to be accomplished. *Humphrys* at 49, 59 O.O. 65, 133 N.E.2d 780. Then, a "construction should be adopted which permits the statute and its various

parts to be construed as a whole and gives effect to the paramount object to be attained." Id. "In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State v. Wilson* (1997), 77 Ohio St.3d 334, 336, 673 N.E.2d 1347, citing *MacDonald v. Bernard* (1982), 1 Ohio St.3d 85, 89, 1 OBR 122, 438 N.E.2d 410.

{¶ 37} As noted above, R.C. 3701.341 grants, pursuant to R.C. Chapter 119, the authority to the Ohio Department of Health to promulgate rules that are related to abortions, not miscarriages or stillbirths. Ohio Adm.Code Chapter 3701–47 is captioned "Abortions." Ohio Adm.Code 3701–47–01 provides the definitions that are to be employed in rules 3701–47–01 to 3701–47–07. Ohio Adm.Code 3701–47–01(A) defines an "abortion" as:

{¶ 38} "[T]he purposeful termination of a human pregnancy by any person, including the pregnant woman herself, with an intention other than to produce a live birth or to remove a dead fetus or embryo."

{¶ 39} In construing the statute and the aforecited administrative regulations as a whole, we conclude that the purpose of R.C. 3701.341 is to permit the promulgation of rules regulating matters related to abortions, including post-abortion counseling, the humane disposal of the aborted product, post-abortion procedures protecting the health of the woman, and post-abortion pathological reports. Therefore, as a matter of law, the trial court did not err in finding that R.C. 3701.341 does not establish any duty or standard of care in the disposal of a fetus (of 20 weeks or less of gestation) that results from a miscarriage or stillbirth. Appellant's first assignment of error is not well taken.

{¶ 40} In her second assignment of error, appellant maintains that the court below erred in granting summary judgment to appellees on the second count in her complaint. This count alleges that appellees engaged in tortious conduct by mishandling a corpse, body, or, specifically, fetus, because of the manner in which the hospital and Lukas disposed of the fetal tissue.

{¶ 41} The definition of the tort of "Interference With Dead Bodies" is found in 4 Restatement of the Law 2d, Torts (1979) 274, Section 868, and reads:

{¶ 42} "One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon a *body* of a dead *person* or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the *body.*" (Emphasis added.)

{¶ 43} In *Brownlee v. Pratt* (1946), 77 Ohio App. 533, 33 O.O. 356, 68 N.E.2d 798, this court recognized the tort of interference with the burial of a dead body, also called the right of sepulcher, and allowed damages for the emotional distress suffered by a daughter as the result of the intentional interference with the body

of her deceased father. See, also, *Biro v. Hartman Funeral Home* (1995), 107 Ohio App.3d 508, 669 N.E.2d 65. Several years later, the Eighth District Court of Appeals revisited the tort with respect to the legal basis for permitting the recovery of damages for emotional distress resulting from the negligent mishandling of a dead body. *Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 514 N.E.2d 430. See, also, *Chesher v. Neyer* (S.D.Ohio 2005), 392 F.Supp.2d 939, 953 (citing *Carney* for the proposition that Ohio courts permit "recovery for negligent infliction of emotional distress" for interference with a dead body).

{¶ 44} The *Carney* court examined, at length, the basis for a claim of interference with a dead body and determined that it is a "subspecies" of a claim for the negligent infliction of serious emotional distress that does not require that a plaintiff directly observe the interference. Cf. *High v. Howard* (1992), 64 Ohio St.3d 82, 85–86, 592 N.E.2d 818, reversed on other grounds, *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 617 N.E.2d 1052 (recovery for negligent infliction of emotional distress is limited "to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person"). The rationale supporting the Eighth Appellate District's finding " 'is an especial likelihood of genuine and serious mental distress arising from the special circumstances which serves as a guarantee that the claim is not spurious.' " *Carney* at 34, 514 N.E.2d 430, fn. 4, quoting Prosser, Law of Torts (4th Ed.1971) at 328–330. Those circumstances supporting that guarantee must, however, be outrageous and egregious. *Powell v. Grant Med. Ctr.* (2002), 148 Ohio App.3d 1, 771 N.E.2d 874, ¶ 24.

{¶ 45} In this case of first impression, the trial judge acknowledged the existence of the tort of interference with a dead body or mishandling of a dead body, but declined to extend the meaning of "body" or "person" to include "fetal tissue." The judge then found that in order for the next of kin to bring a claim premised upon the tort of interference with a dead body, a fetus would have to survive birth.

{¶ 46} Appellant asks this court to adopt the law of out-of-state cases in order to find that a cause of action exists for emotional distress suffered by the parents as the result of the mishandling of a fetus that is at or less then 20 weeks of gestation.

{¶ 47} The first case cited by appellant is *Emeagwali v. Brooklyn Hosp. Ctr.* (2006), 11 Misc.3d 1055(A), 815 N.Y.S.2d 494, 2006 WL 435813. In that case, the mother delivered a 21–and–one–half–week–old fetus. Id. There was some question as to whether the fetus was alive at the time of birth. In any event, the hospital, without consulting with the parents, delivered the fetus's remains to the hospital's pathology department for disposal. Id. The parents brought suit

against the hospital based upon their right of sepulcher and an allegation that the hospital failed to comply with its own procedures by failing to obtain their permission for the disposal of the fetal remains. Id. The case went to trial and the parents were awarded $2 million.

{¶ 48} The hospital filed a motion for a judgment notwithstanding the verdict, in which it argued that the plaintiffs failed to establish entitlement to damages under any "cognizable New York law." Id. The hospital maintained, in the alternative, that it was entitled to a new trial based upon the manifest weight of the evidence and the influence of the "irrelevant, grossly prejudicial materials offered at trial." Id. The New York trial court determined that even if a fetus was never alive, the parent or parents have a common-law right of sepulcher. Id. The court based this finding on a parent's "quasi-property right in the body because fetuses, stillborn or not, have symbolic importance vastly different from that of ordinary tissue due to the physical presence mothers feel in their body and the hopes and dreams she had for the future." Id., citing *Janicki v. Hosp. of St. Raphael* (1999), 46 Conn.Supp. 204, 216, 744 A.2d 963. The court further found that the plaintiffs could recover for their emotional damages because (1) a written hospital policy recognized a parent's right to religious and private burial opportunities, or, at the least, to request the remains of a stillborn fetus; and (2) New York state health regulations require a hospital to deliver a fetus that has completed a gestation period of 20 weeks "to only a licensed funeral director or undertaker." Id.

{¶ 49} We find that the rule of law concerning the right to receive damages for emotional distress as the result of interference with fetal tissue or a fetus set forth in *Emeagwali*, as well as in *Janicki*, which also espouses the quasi-property approach, are not dispositive of the outcome of this assignment of error. First, in *Carney v. Knollwood Cemetery Assn.*, 33 Ohio App.3d at 35, 514 N.E.2d 430, the Eighth District Court of Appeals expressly rejected "the fiction that a next of kin has a quasi-property right in a dead body." While we are not bound by the rule set forth in *Carney*, we find the law set forth therein persuasive. Moreover, there is no evidence in the record of this cause to establish either a hospital policy similar to that of the Brooklyn Hospital Center or a controlling state regulation.

{¶ 50} Furthermore, appellant's supplemental authority, *Wadley v. St. Vincent's Hosp.* (July 20, 2006), Cir. C. No. CV-2004-1257-RSV, 2006 WL 2061785, which is an Alabama Circuit Court case, can also be distinguished. In *Wadley*, the fetus, whom the parents named Mitchell, died in utero, at about 13 weeks of gestation. Id. at * 1. The parents told their obstetrician that they wanted Mitchell to be cremated and did not want any testing performed. At that time, St. Vincent's Hospital had a written policy governing the handling of a deceased fetus, which required placing the fetus in a pathology container with formalin and

obtaining the consent of the parents to both a release of the fetus to pathology and an authorization for the performance of an autopsy. Id. at * 6. Pursuant to the policy, "every fetus of less than 20 weeks gestation is directed through the pathology department on the way to be cremated regardless of whether any testing" was to be performed. Id.

{¶ 51} The mother's physician completed a "surgical pathology ticket" in order to release Mitchell for the purpose of cremation, but did not intend to order any tests. Id. The fetus was, however, dissected and tested by the pathologist and stored, along with 19 other fetuses, in a picnic cooler in the hospital's freezer. Id. at * 4. All of the fetuses were cremated together, some 18 months later. Id. When the Wadleys discovered what had happened, they filed suit seeking damages for the mental anguish they suffered as the result of the disposition of Mitchell. Id. at * 6.

{¶ 52} The *Wadley* court, relying on *Janicki* and *Emeagwali,* found that the parents had a proper claim for "mental anguish" suffered as the result of the hospital's negligent treatment of a nonviable fetus. Id. at * 9. Once again, the outcome of *Wadley* was based upon the next of kin's quasi-property right in the fetus. Further, as set forth above, the testing of the fetus violated hospital policy. For these reasons, we also find *Wadley* unpersuasive.

{¶ 53} In conclusion, we are of the opinion that the out-of-state law cited by appellant is inapplicable to the case sub judice. Moreover, we are not inclined to create a new cause of action for the negligent infliction of emotional distress that results from the interference with the burial or cremation of a fetus that is at or less than 20 weeks of gestation and does not survive birth. In this state, it is the Ohio Supreme Court or the General Assembly that creates new causes of action. *Strausbaugh v. Ohio Dept. of Transp.,* 150 Ohio App.3d 438, 2002-Ohio-6627, 782 N.E.2d 92, ¶ 38; *Anderson v. St. Francis–St. George Hosp.* (1992), 83 Ohio App.3d 221, 614 N.E.2d 841. See, generally, *High v. Howard* (1992), 64 Ohio St.3d 82, 592 N.E.2d 818. Accordingly, appellant's second assignment of error is not well taken.

{¶ 54} In her third assignment of error, Hayth asserts that the trial court erred by granting summary judgment to Firelands on her claim of fraud by omission.

{¶ 55} In order to prevail on a claim of fraud, a party must prove *all* of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance

upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus, citing *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169, 10 OBR 500, 462 N.E.2d 407. A claim in fraud may be based upon an omission if there was a duty to disclose a fact. *Bundy v. Harrison,* 2d Dist. No. 19080, 2002-Ohio-1806, 2002 WL 506423. See, also, *Carder Buick–Olds Co., Inc. v. Reynolds & Reynolds, Inc.,* 148 Ohio App.3d 635, 2002-Ohio-2912, 775 N.E.2d 531, ¶ 48.

{¶ 56} Here, appellant argues that the hospital and/or appellant's physician had a duty to disclose the hospital policy related to the disposal of fetal tissue. Appellant argues that two cases, *McCulley v. Good Samaritan Hosp.* (1998), 131 Ohio App.3d 341, 722 N.E.2d 563, and *Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 13 OBR 477, 469 N.E.2d 1047, stand for the proposition that a hospital and/or a physician has a duty to disclose when asked for certain information by a patient. Even though we agree with this precept, we find that the trial court did not err in dismissing appellant's claim of fraud by omission.

{¶ 57} Hayth asked what would happen to the fetal tissue that resulted from her miscarriage. Her physician replied that the fetus would be cremated. Assuming, arguendo, that both hospital personnel and Hayth's physician had a duty to disclose hospital policy for the disposal of fetal tissue in answering this question, no evidence was offered by appellant to create a genuine issue of material fact on the element of whether either the hospital personnel or her obstetrician intentionally misled Hayth by stating that the fetal tissue would be cremated. Accordingly, the trial court did not err in granting summary judgment to Firelands on appellant's claim of fraud, and Hayth's third assignment of error is not well taken.

{¶ 58} In her fourth assignment of error, appellant asserts that the trial court erred in dismissing her claim for negligent infliction of emotional distress.

{¶ 59} To defeat a motion for summary judgment on a claim for negligent infliction of emotional distress, a plaintiff must present evidence creating a genuine issue of material fact on the following factors: (1) the plaintiff was a bystander, (2) the plaintiff reasonably appreciated the peril that took place, whether or not the victim suffered actual physical harm, and (3) the plaintiff suffered serious emotional distress as a result of this cognizance or fear of peril. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 80, 6 OBR 114, 451 N.E.2d 759. In *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 652 N.E.2d 664, the Ohio Supreme Court reemphasized that recovery for the negligent infliction of emotional distress is allowed only in those instances in which a person is a bystander to the accident or experiences fear associated with physical consequences to him or

herself.   Id. at 85, 652 N.E.2d 664, citing *High v. Howard,* 64 Ohio St.3d at 85, 592 N.E.2d 818.

{¶ 60} In the present case, appellant argues that the common law tort of interference with a dead body/right of sepulcher, as a subspecies of the tort of negligent infliction of emotional distress, is an exception to the requirement to the rule set forth in *Paugh* and *Heiner.*   In particular, appellant asserts that she was not required to be a bystander to the disposition of the fetal tissue or to experience fear associated with peril to herself in order to recover compensation for appellees' alleged negligent infliction of emotional distress.

{¶ 61} Assuming, without deciding, that appellant is correct and that in the context of this case, the rule set forth in *Paugh* and *Heiner* is inapplicable, the trial court did not err in dismissing this cause of action.   As discussed in appellant's first assignment of error, we determined that we would not create the tort of intentional, negligent, or reckless interference with a dead body that includes a fetus at or less than 20 weeks of gestation.   Thus, appellant cannot rely on this tort in order to make a claim for negligent infliction of emotional distress without establishing that she was a bystander to the disposition of the fetal tissue or that she experienced fear associated with physical consequences to herself.   Accordingly, the trial court did not err in granting summary judgment to appellees on appellant's claim founded upon the negligent infliction of emotional distress.   Appellant's fourth assignment of error is not well taken.

{¶ 62} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Erie County Court of Common Pleas is affirmed.   Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.   Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal are awarded to Erie County.

Judgment affirmed.

SKOW and GLASSER, JJ., concur.