LARRY A. JONES, SR., J.:
{¶ 1} Plaintiffs-appellants Wendy and Rick Penniman (the "Pennimans") appeal the trial court's dismissal of their declaratory judgment action. For the reasons that follow, we affirm.
{¶ 2} This case stems from an incident in March 2018 in which a freezer malfunction at one of defendants-appellees University Hospitals Health System, Inc.'s ("UHHS") facilities caused the destruction of a number of human eggs and/or embryos being stored at the facility. The Pennimans allege that one or more of their cryogenically preserved embryos were destroyed as a result of the malfunction.
{¶ 3} The Pennimans filed two separate actions in the Cuyahoga County Common Pleas Court against UHHS and related entities. Cuyahoga C.P. No. CV-18-894396 is an action for money damages. Cuyahoga C.P. No. CV-18-895503 is an action in declaratory judgment, in which the Pennimans seek "a declaratory judgment * * * that the life of a person begins at the moment of conception, declaring that the legal status of an embryo is that of a person; and for costs incurred herein." UHHS subsequently moved to consolidate the two cases. The Pennimans objected to consolidation. The trial court granted UHHS's motion.
{¶ 4} UHHS filed a motion to dismiss the declaratory judgment action pursuant to Civ.R. 12(B)(6). The Pennimans objected to the motion. The trial court granted UHHS's motion to dismiss finding that the Pennimans' complaint did not state a claim under Ohio law. This appeal followed.
{¶ 5} The Pennimans raise one assignment of error for our review:
I. The trial court erred by finding the Complaint failed to state a claim for relief under Ohio law.
{¶ 6} In their sole assignment of error, the Pennimans claim that the trial court erred in granting UHHS's motion to dismiss.
{¶ 7} This court reviews a trial court's ruling on a Civ.R. 12(B)(6) motion de novo. Perrysburg Twp. v. Rossford , 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5, citing Cincinnati v. Beretta U.S.A. Corp. , 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136. In applying the de novo standard of review, this court independently reviews the record without affording deference to the trial court's judgment.
*335 Bandy v. Cuyahoga Cty. , 8th Dist. Cuyahoga No. 106635, 2018-Ohio-3679, 2018 WL 4377970, ¶ 10, citing Herakovic v. Catholic Diocese of Cleveland , 8th Dist. Cuyahoga No. 85467, 2005-Ohio-5985, 2005 WL 3007145, ¶ 13.
In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. Doe v. Archdiocese of Cincinnati , 109 Ohio St.3d 491, 2006-Ohio-2625 [849 N.E.2d 268], ¶ 11, citing O'Brien v. Univ. Community Tenants Union, Inc. , 42 Ohio St.2d 242, 327 N.E.2d 753 (1975).
In resolving a Civ.R. 12(B)(6) motion, a court's factual review is confined to the four corners of the complaint. McKee v. Univ. Circle, Inc. , 8th Dist. Cuyahoga No. 102068, 2015-Ohio-2953 [2015 WL 4507206], ¶ 12. Within those confines, a court must accept as true all material allegations of the complaint and make reasonable inferences in favor of the nonmoving party. Id. " '[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.' " Id. , quoting York v. Ohio State Hwy. Patrol , 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991).
Bandy at ¶¶ 11-12.
{¶ 8} The Pennimans sought a declaratory judgment that human life begins at conception and thus their embryos constitute persons under Ohio law in order to pursue a wrongful death claim against UHHS. In order to maintain an action for declaratory relief, the plaintiff must show that (1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties. Wymsylo v. Bartec, Inc. , 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 31, citing Burger Brewing Co. v. Liquor Control Comm. , 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973), citing Am. Life & Acc. Ins. Co. v. Jones , 152 Ohio St. 287, 89 N.E.2d 301 (1949).
{¶ 9} This case appears to be one of first impression in this state. The Pennimans claim that a real controversy exists as to the legal status of embryos that is justiciable in character. The trial court disagreed, finding that "an embryo that has not been implanted into the uterus does not constitute a 'distinct human entity' and thus is not entitled under the law of Ohio to the rights and protections of a person."
{¶ 10} The term embryo is not well-defined under Ohio law. The embryos at issue in this case were cryogenically preserved, or frozen, embryos. Some states refer to embryos that have not yet been implanted in the uterus as pre-embryos. See In re Marriage of Rooks , 2018 CO 85, 429 P.3d 579 (2018). There is no contention that an embryo that has not yet been implanted into the uterus cannot, on its own, become a child. In other words, medical intervention is necessary in order for a pre-implanted embryo to form into a child. In Walker v. Firelands Community Hosp. , 170 Ohio App.3d 785, 2007-Ohio-871, 869 N.E.2d 66, ¶ 6 (6th Dist.), fn. 3, the Sixth Appellate District defined an "embryo" as a developing human before two months gestation. Id. , citing Merriam-Webster Online Dictionary , http://www.merriam-webster.com (Jan. 2, 2004). For ease of discussion, because the contract between the Pennimans and UHHS referred to "embryos," and because the parties have chosen to use the term "embryo," we refer to the word "embryo" throughout this opinion to refer to pre-implanted embryos in general and the Pennimans' pre-implanted *336 cryogenically preserved embryos specifically.
{¶ 11} R.C. 2901.01(B) defines a "person" as "i. An individual, corporation, business trust, estate, trust, partnership, and association; ii. An unborn human who is viable." R.C. 2901.01(B)(1)(a). R.C. 2919.19(J) defines an "unborn human individual" as "an individual organism of the species homo sapiens from fertilization until live birth." R.C. 2919.19(B) defines a "fetus" as "human offspring developing during pregnancy from the moment of conception and includes the embryonic stage of development."
{¶ 12} The Pennimans argue that the trial court incorrectly relied on criminal code sections to determine whether an embryo is a person, but themselves rely on R.C. 2919.19 to support their claim that an embryo is a person. The Pennimans contend that because R.C. 2919.19(J) defines an "unborn human individual" as "an individual organism of the species homo sapiens from fertilization until live birth," the life of a person begins at the moment of conception. What the Pennimans miss is that while an "unborn human individual" under Ohio law begins at the moment of conception, in order for an unborn human to constitute a "person" under the statute, the unborn human must be viable. Ohio law defines "viable" as "the stage of development of a human fetus at which there is realistic possibility of maintaining and nourishing of life outside the womb with or without temporary artificial life-sustaining support." R.C. 2901.01(B)(1)(c)(ii). An embryo does not fit within this definition. As the trial court in this case concluded: "If a nonviable fetus is not a distinct human entity, then certainly an embryo which has not been implanted into the uterus, and which accordingly is not even as yet a fetus, cannot be found to be more than that."
{¶ 13} Two other statutes, which the parties referenced but the trial court did not rely on, R.C. 2307.11 and R.C. 1.59, define a "person," in part, as an "individual." The Pennimans argue that because the term "individual" is not further defined, "it is reasonable to believe that embryos are included within this definition of a person." Appellant's brief, p. 13. The Pennimans cite no authority for their argument and we find it unpersuasive.
{¶ 14} The state legislature has not extended the rights of the fetus to an embryo. Where there is a fixed and clear preexisting legal meaning for language the courts must give effect to it. State v. Dickinson , 23 Ohio App.2d 259, 260, 263 N.E.2d 253 (5th Dist.1970). As we analyze this case, we find the word "person" to have a clear and fixed meaning within the context of Ohio law.
{¶ 15} In the context of civil personal injury cases, the term "person" historically has included viable unborn fetuses. See Williams v. Marion Rapid Transit, Inc. , 152 Ohio St. 114, 87 N.E.2d 334 (1949) (holding that an unborn viable child injured by another's negligence may, after birth, maintain an action for such injury because an unborn viable child is a "person," within the meaning of Section 16, Article I of the Ohio Constitution, and if injured before birth may after birth maintain an action for such injury) and Jasinsky v. Potts , 153 Ohio St. 529, 92 N.E.2d 809 (1950) (holding that a viable infant who survives birth is a "person" within the meaning of Ohio's wrongful death statute). In Werling v. Sandy , 17 Ohio St.3d 45, 46, 476 N.E.2d 1053 (1985), the Ohio Supreme Court held that an unborn fetus may be considered a "person" in the context of a wrongful death claim "as long as it is established that the fetus was viable at the time of its injury." The court extended the cause of action to a viable fetus delivered *337 stillborn, determining that "a cause of action may arise under the wrongful death statute when a viable fetus is stillborn since a life capable of independent existence has expired." Id. at 47, 476 N.E.2d 1053.
{¶ 16} In Werling , the court adopted the "viability test," but declined to set a definitive stage at which a fetus can be considered viable. Rather, the court recognized the flexibility of the concept of viability and the effect of modern technology upon perinatal and neonatal survival rates. Egan v. Smith , 87 Ohio App.3d 763, 766, 622 N.E.2d 1191 (6th Dist.1993), citing Werling at 48, 476 N.E.2d 1053. But, for purposes of the appeal, the Werling court believed "the better reasoned view is to recognize the viable child as a person under the statute rather than to designate the same status to a fetus incapable of independently surviving a premature birth." Id. at 48-49, 476 N.E.2d 1053. The Werling court concluded that viability for purposes of bringing a wrongful death claim is that "point in prenatal development at which time a fetus is capable of independent existence if removed from the mother's womb." Id. at 45, fn. 1, 476 N.E.2d 1053.
{¶ 17} In Jones v. MetroHealth Med. Ctr. , 2017-Ohio-7329, 89 N.E.3d 633 (8th Dist.), this court addressed whether a fetus has an independent common-law claim for lack of informed consent. This court considered whether an unborn fetus was a person for purposes of seeking a legal remedy under Article I, Section 16 of the Ohio Constitution. Id. at ¶ 99. Key in this analysis, this court observed, is the viability of the fetus, for "a nonviable fetus is not a distinct human entity with rights that can be enforced." Id. at ¶ 100. This court noted that R.C. 2919.16(M) defines viability as the stage of development of a human fetus where "there is a realistic possibility of the maintaining and nourishing of a life outside of the womb with or without temporary artificial life-sustaining support." Id. at ¶ 101, fn. 10.
{¶ 18} The Pennimans attempt to distinguish Jones , arguing that Jones solely discussed the rights of a fetus in utero and did not touch on the rights of embryos. While Jones concerned a fetus, and not an embryo, Jones did not limit its analysis to fetal rights in utero. Jones addressed a broader question: Is an unborn child a person for purposes of seeking a legal remedy? Jones at ¶ 99. This court concluded that, as a condition of personhood, a fetus in the womb must have a realistic possibility of living outside it. Id. at ¶¶ 100-101, fn. 10.
{¶ 19} Thus, viability in the context of personhood has been historically referred to as a fetus's ability to exist outside the womb. Jones at id. ; Werling at id. ; Marion Rapid Transit, Inc. , 152 Ohio St. at 128, 87 N.E.2d 334. As mentioned, in Jones , the touchstone "is the viability of the child, for a nonviable fetus is not a distinct human entity with rights that can be enforced." Id. at ¶ 100.
{¶ 20} The Pennimans suggest that because Jones determined that the deciding factor in the rights of an unborn child under the wrongful death act is the viability at the time of injury, this court should consider the viability of an embryo at the time of injury to the embryo. According to the Pennimans, while viability of a fetus is determined as being the stage of development at which there is a realistic possibility of maintaining and nourishing life outside the womb, R.C. 2901.01(B)(1)(c)(ii), the determination for the viability of an embryo is different. According to the Pennimans, Wendy Penniman's doctors made the determination that her embryos were viable before they froze them: "Since only three embryos were frozen, it is clear that at the time of Appellant's treatment, her *338 doctors made the determination of which embryos were viable [and] [t]hose viable embryos were subsequently frozen for later use." Appellant's brief, page 17. Thus, the Pennimans argue, if we were to follow the logic in Jones , the determining factor for deciding the rights of an embryo should be the viability of the embryo at the time of injury to the embryo. We disagree; the Pennimans provide no authority for their attempt to redefine and expand the definition of viability in the context of personhood and we find their argument unpersuasive.
{¶ 21} As mentioned, this is a case of first impression in this state. In considering cases from other appellate districts, we note without agreeing, that, in Griffiths v. Rose Ctr. , 5th Dist. Stark No. 2005CA00256, 2006-Ohio-1573, 2006 WL 827335, ¶ 23, the Fifth Appellate District determined that twins delivered at 21 weeks, who were nonviable at the time of the alleged injury but were born alive and lived less than two hours, were not "persons" within the meaning of the Ohio wrongful death statute. "The law in Ohio recognizes the viable child as a person under the wrongful death statute rather than to designate the same status to a fetus incapable of independently surviving a premature birth." Id. , citing Werling .
{¶ 22} In Egan , 87 Ohio App.3d at 767, 622 N.E.2d 1191, the Sixth Appellate District addressed whether an unviable fetus was a "person" within the meaning of R.C. 2125.01. The court determined that no genuine issue of material fact existed concerning whether a nonviable fetus was a "person" within the meaning of R.C. 2125.01 and concluded that the appellant could not maintain a wrongful death action on the behalf of the statutory beneficiaries of the nonviable fetus as a matter of law. Id.
{¶ 23} In Cwik v. Cwik , 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, 2011 WL 346173, the First Appellate District dismissed a husband's argument that he should be awarded custody of his and his ex-wife's frozen embryos because he would hire a surrogate to give birth to the embryos and the embryo-cryopreservation contract they had signed with the hospital was unconscionable. According to the husband, the contract was unconstitutional pursuant to the 13th Amendment. The court disagreed, noting that "[c]ourts have not afforded frozen embryos legally protected interests akin to persons," and, further, that the trial court's treatment of the embryos as property was not an abuse of discretion. Id. at ¶¶ 57, 63.
{¶ 24} Thus, no court in Ohio has extended the rights of a viable fetus to a nonviable fetus, let alone an embryo that has not yet been implanted into the uterus.
{¶ 25} Additionally, contrary to the Pennimans' argument, existing statutory definitions of a person do not conflict with each other and thus collectively do not create ambiguity over whether an "embryo" is a "person" under Ohio law. Statutes mentioned throughout this opinion define terms in a way that give certain unborn humans specific protections under Ohio law. See R.C. 2901.01(B) ; R.C. 2919.16(M). None of these statutes extend those protections to embryos. In other words, the General Assembly has adopted statutory provisions to protect certain rights possessed by unborn children and has historically defined who possesses the rights it has conferred. The legislature has not extended those rights to embryos.
{¶ 26} By way of illustration, when the General Assembly intends to refer to unborn children as persons, it does so by expressly adding them to a definition that already includes individuals. Compare R.C. 2901.01(B)(1)(a)(i) (defining person to include "an individual,") with R.C. 2901.01(B)(1)(a)(ii) (defining person also to *339 include "[a]n unborn human who is viable"). There is no conflict between a statute defining a "person" as including "individuals" and one that defines this same term as including "an unborn human who is viable." Additionally, we find no conflict between defining an "unborn human" as "an individual organism of the species homo sapiens from fertilization until live birth" and limiting personhood to an "unborn human who is viable." A broad definition of an "unborn human" does not require an equally broad definition of its legally protected rights.
{¶ 27} Neither have Ohio courts afforded frozen embryos legally protected interests akin to persons. Cwik , 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, at ¶ 57 ; see also Doe v. Obama , 670 F.Supp.2d 435, 440 (S.D.Md.2009) (holding that "in order to establish an injury in fact, an embryo must be able to show an 'invasion of a legally protected interest,' which embryos do not possess as they are not considered to be persons under the law.") We conclude that Ohio statutory law is neither in conflict nor ambiguous and, consistent with common law and constitutional principles, confers no rights on frozen embryos themselves.
{¶ 28} We are cognizant of the emotional pain that the Pennimans suffered as a result of the untimely loss of their embryos. It is undisputed, however, that the pre-implanted embryos being stored at UHHS's facilities were not capable of independent survival. We reject a cause of action for wrongful death on behalf of an embryo and instead defer to the legislature for any substantial expansion of the scope of liability under Ohio's wrongful death statute - Ohio law does not allow a cause of action based upon the alleged wrongful death of an embryo.
{¶ 29} Thus, the trial court correctly concluded that an embryo that has not been implanted into the uterus of a woman does not constitute a "distinct human entity" and is therefore not entitled to the rights and protections of a person. There is no genuine dispute to resolve and thus no claim upon which relief could be granted. Because the Pennimans' complaint failed to state a claim for which relief could be granted, the trial court did not err in granting UHHS's motion to dismiss.
{¶ 30} The assignment of error is overruled.
{¶ 31} Judgment affirmed.
EILEEN T. GALLAGHER, P.J., CONCURS; SEAN C. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION