[Cite as *Cline v. Stein*, 2015-Ohio-2979.]

STATE OF OHIO        )              IN THE COURT OF APPEALS
                          )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE    )

DOUGLAS CLINE, et al.              C.A. No.       13CA0052

      Appellants

      v.                               APPEAL FROM JUDGMENT
                                      ENTERED IN THE
TODD A. STEIN and              COURT OF COMMON PLEAS
DUSTIN J. GEITGEY            COUNTY OF WAYNE, OHIO
                                      CASE No.      12 CV 0143

      Appellees

DECISION AND JOURNAL ENTRY

Dated: July 27, 2015

CARR, Judge.

{¶1} Appellant Douglas Cline, individually and as parent and next friend of Joshua Cline, a minor, appeals the judgment of the Wayne County Court of Common Pleas. This Court affirms in part, reverses in part, and remands.

I.

{¶2} Seven-year old Joshua Cline and his three-year old brother Corey were riding in their cousin's SUV after church on February 22, 2009, when their cousin, appellee Dustin Geitgey, hit a patch of black ice and lost control of the vehicle. The SUV veered off the road, and flipped onto the passengers' side in a ditch. Mr. Geitgey extracted both children from the vehicle and returned to help his girlfriend Katie exit the vehicle. As the four were standing near the roadway, appellee Todd Stein was driving along the road at approximately 25 m.p.h. when his car hit the same patch of black ice. Mr. Stein lost control of his vehicle which began skidding towards the SUV and area where the children were standing. Katie was able to pull

Joshua out of the path of Mr. Stein's car, but tragically the car hit Corey, killing him. After emergency personnel arrived on the scene, Joshua was taken to the hospital for evaluation.

{¶3} In November 2009, Lauren Cline, the mother of the children, was appointed as the administrator of Corey's estate in the Wayne County Probate Court. In December 2009, the Clines (Lauren, individually and as administrator of Corey's estate, and Douglas, individually and as parent and next friend of Joshua) filed a complaint in the Stark County Court of Common Pleas, case number 2009 CV 04873, against Mr. Stein for negligence resulting in Corey's fatal injuries and Joshua's bodily injuries and mental anguish. The Clines also sued their automobile insurance company, alleging claims for uninsured/underinsured motorist benefits, breach of contract, and bad faith. Mr. Stein filed a third-party complaint against Stacey Geitgey, the owner of the SUV, for negligent entrustment, and against the driver Dustin Geitgey for contribution or indemnification.

{¶4} In an undated release, Mrs. Cline, individually and as administrator of Corey's estate, released Mr. Stein and Grange Mutual Casualty Company (the company who insured Mr. Stein) from all actions and claims arising out of and in any way related to the February 22, 2009 accident, in consideration of the payment of $100,000. In addition, the release expressly referenced Mrs. Cline's consent to the dismissal of all claims against Mr. Stein in case number 2009 CV 04873. The release bears no discernable time-stamp, and references only a claim number (APV000905277), but no court case number.

{¶5} On October 26, 2010, the Wayne County Probate Court judge, in case number E-70487-09, approved a settlement and distribution of the wrongful death claim regarding Corey. Of the $500,000 proffered settlement, the probate court approved a $100,000 payment for attorney fees, a $200,000 distribution to Mrs. Cline, and a $200,000 distribution to Mr. Cline,

noting their relationship to the decedent as "Mother" and "Father." Moreover, the probate court found that "all of the beneficiaries of the wrongful death claim are on an equal degree of consanguinity, are adults, and have agreed how the net proceeds allocated to the wrongful death claim are to be distributed." No provision was made for Joshua pursuant to the approved settlement and distribution.

{¶6} In February 2012, Douglas Cline, individually and as parent and next friend of Joshua, filed a civil complaint against Mr. Stein in the Wayne County Court of Common Pleas. Although the complaint identified a sole count of negligence, it alleged that Mr. Stein's negligent operation of his vehicle caused Joshua to suffer physical, as well as mental injuries, arising from his own injuries and witnessing his brother Corey's death. All parties and the trial court proceeded with the case with the understanding that Joshua had alleged multiple causes of action, rather than a single cause of action. Mr. Stein filed a third party complaint against Dustin Geitgey for indemnification/contribution. Grange Mutual Casualty Company, who was granted leave to intervene, filed a complaint seeking declaratory judgment with respect to which claims and issues it was obligated to defend Mr. Stein.

{¶7} Mr. Stein and Mr. Geitgey filed motions for summary judgment. Both parties conceded that Joshua could maintain an action for his own personal injuries sustained as a result of the accident. They both argued, however, that Joshua's claim for damages for emotional distress relating to Corey's death was barred by res judicata as that claim was either disposed or should have been disposed as part of the wrongful death action for which the Wayne County Probate Court approved a settlement and distribution. Both defendants also moved for summary judgment on the issue of punitive damages. In addition, Mr. Geitgey moved for summary judgment on Mr. Stein's claim that his (Geitgey's) negligence was the proximate cause of

Joshua's injuries. Joshua responded in opposition. The trial court denied Mr. Geitgey's motion for summary judgment as it related to his negligence. It granted both defendants' motions for summary judgment as they related to punitive damages. Finally, the trial court denied both defendants' motions for summary judgment as they related to Joshua's claim for emotional distress. The trial court found that Joshua was alleging claims for bodily injuries and mental distress which were separate and distinct from injuries he suffered as a result of dealing with his brother's death. Specifically, the trial court wrote: "Plaintiff's claim for emotional distress is not precluded by the settlement of Corey's wrongful death claim, it is merely limited."

{¶8} Plaintiff's counsel, purportedly on behalf of all the parties, moved for a pretrial hearing at which the trial court would clarify "what specific claims can be advanced at the Trial" as the parties, upon reviewing the court's ruling on the motions for summary judgment had "cordially agreed to disagree" in that regard. The court held a pretrial, although there is no transcript of that proceeding in the record. After the pretrial, the trial court issued a briefing schedule which identified the due dates of the parties' briefs, but not the issue(s) to be briefed. All parties submitted briefs addressing the viability of Joshua's claims for mental distress. The parties appeared to agree that Joshua could maintain a claim for mental distress arising from his own physical injuries. They disputed whether he could maintain a claim for any injuries arising out of his observation of Corey's death or otherwise relating to Corey's death.

{¶9} In consideration of the additional briefs, the trial court issued a judgment entry affirming its prior ruling on the motions for summary judgment. After mentioning a cause of action for negligent infliction of emotional distress, the trial court ordered that "Joshua Cline is permitted to assert any claims for mental anguish arising from his own separate physical injuries but is precluded from introducing evidence or claiming mental anguish associated from the death

of Corey Cline as those claims have been settled." Joshua[1] appealed and raises one assignment of error for review.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT PRECLUDING JOSHUA CLINE FROM INTRODUCING EVIDENCE OR CLAIMING MENTAL ANGUISH ASSOCIATED WITH THE DEATH OF COREY CLINE.

{¶10} Joshua argues that the trial court erred by granting summary judgment in favor of Messrs. Stein and Geitgey on his claims for emotional distress/mental anguish. This Court agrees only in part.

{¶11} As a preliminary matter, this Court is obligated to raise sua sponte questions related to our jurisdiction. *Whitaker-Merrell Co. v. Geupel Constr. Co., Inc.*, 29 Ohio St.2d 184, 186 (1972). This Court has jurisdiction to hear appeals only from final judgments. Article IV, Section 3(B)(2), Ohio Constitution; R.C. 2501.02. In the absence of a final, appealable order, this Court must dismiss the appeal for lack of subject matter jurisdiction. *Lava Landscaping, Inc. v. Rayco Mfg., Inc.*, 9th Dist. No. 2930-M, 2000 WL 109108 (Jan. 26, 2000).

{¶12} Civ.R. 54(B) allows a trial court to enter a final judgment as to fewer than all the claims or parties only upon the "express determination that there is no just reason for delay." In this case, the trial court made such express determination. The question is whether the trial court disposed of fewer than all the claims or merely fewer than all the issues associated with a lone claim. A trial court must dispose of at least one full claim, not merely part of one claim, to render Civ.R. 54(B) certification effective to allow appellate court review. *See Ferraro v. B.F.*

---

[1] For ease of discussion, this Court will refer to the appellant as Joshua.

*Goodrich Co.*, 149 Ohio App.3d 301, 2002-Ohio-4398, ¶ 17 (9th Dist.), citing *Horner v. Toledo Hosp.*, 94 Ohio App.3d 282, 288 (6th Dist.1993).

{¶13} Here, Joshua named one count in his complaint, to wit: negligence. However, he pleaded facts giving rise to multiple claims. Specifically, he alleged (1) personal (physical and emotional) injuries as a result of Mr. Stein's negligent operation of his vehicle, i.e., negligence; (2) emotional distress as a result of having witnessed his brother's death, i.e., negligent infliction of emotional distress; (3) emotional distress as a result of fearing for his own safety as Mr. Stein's vehicle slid toward him, i.e., negligent infliction of emotional distress; and (4) emotional distress arising out of the wrongful death of his brother, i.e., wrongful death. While the parties' briefs might have been inartfully drafted with regard to the clear identification of claims, no one disputed that Joshua had pleaded multiple causes of action in this case. Moreover, the trial court managed this matter as though Joshua was maintaining multiple causes of action, referring to negligence, negligent infliction of emotional distress, and wrongful death. Accordingly, the parties and trial court have all acquiesced in the understanding that Joshua has pleaded multiple causes of action, and this Court will recognize the same. *See Michaels v. Michaels*, 9th Dist. Lorain No. 09CA009717, 2010-Ohio-6052, ¶ 21 (recognizing that Civ.R. 8(E)(2) allows a party to state multiple claims in one count). Therefore, if the trial court disposed of at least one full claim of the multiple claims alleged by Joshua, then the court's Civ.R. 54(B) certification would be effective to allow this Court to consider the merits of the appeal.

{¶14} At first blush, the trial court's judgment entry reads as if it is a ruling on a motion in limine regarding the admissibility of certain evidence. Specifically, the order precludes Joshua from introducing any evidence relevant to his mental anguish associated with his brother's death. It is well settled that a ruling on a motion in limine, i.e., a preliminary

evidentiary ruling, is not a final, appealable order. *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, ¶ 34-35. In this case, however, the concise judgment entry clarifying and affirming the prior ruling on the motions for summary judgment must be read in tandem with the original ruling on those motions for context. The initial ruling denied the defendants' motions for summary judgment as they related to Joshua's negligence claim which prayed for damages arising out of his own physical injuries and mental anguish arising out of his physical injuries. By preventing Joshua from presenting any evidence relating to his emotional distress/mental anguish arising in any way out of his brother's death, the trial court's underlying ruling effectively granted the defendants' motions for summary judgment as they related to Joshua's claims alleging wrongful death and negligent infliction of emotional distress based on his witnessing the harm to his brother. As such, the trial court fully disposed of Joshua's wrongful death claim and one of his two possible negligent infliction of emotional distress claims. By virtue of the certification of the order pursuant to Civ.R. 54(B), this Court has jurisdiction to address the substantive issues raised on appeal.

{¶15} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶16} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶17} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶18} The non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R. 56(C) further provides that "[n]o evidence or stipulation may be considered except as stated in this rule."

{¶19} Joshua argues that the trial court erred by granting summary judgment in favor of Messrs. Stein and Geitgey which foreclosed his ability to prosecute his claims alleging wrongful death and negligent infliction of emotional distress, thereby disposing of those claims. The trial court disposed of those claims by concluding that the only claims for emotional distress/mental anguish remaining were those arising out of Joshua's personal injuries sustained as a result of the accident. Those personal injuries would necessarily include his own physical injuries, as well as

his psychological injuries sustained in apprehension of being hit by Mr. Stein's car. By limiting Joshua's ability to prosecute any other claims, the trial court rendered summary judgment in favor of the defendants on any bystander claim for negligent infliction of emotional distress, as well as any claim for mental anguish arising out of the wrongful death of his brother.

Negligent infliction of emotional distress

{¶20} To prevail on a claim for negligent infliction of emotional distress arising out of witnessing trauma to another, a plaintiff must prove: "(1) the plaintiff was a bystander, (2) the plaintiff reasonably appreciated the peril that took place, whether or not the victim suffered actual physical harm, and (3) the plaintiff suffered serious emotional distress as a result of this cognizance." *Walker v. Firelands Community Hosp.*, 170 Ohio App.3d 785, 2007-Ohio-871, ¶ 59 (6th Dist.), citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 80 (1983). The Ohio Supreme Court further held that a bystander's emotional injuries must be both serious and "reasonably foreseeable" to be compensable. *Paugh* at paragraph three of the syllabus. In determining whether the injuries are "reasonably foreseeable," the following factors are considered: "(1) whether the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) whether the plaintiff and victim (if any) were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Id.* at paragraph three b. of the syllabus.

{¶21} The Ohio Supreme Court further made clear in *Paugh* that a plaintiff need not have suffered any physical injuries to maintain a claim for negligent infliction of emotional distress. *Id.* at paragraph two of the syllabus. In the absence of the manifestation of physical

injuries, however, the emotional distress must have been severe and debilitating. *Id.* at paragraph three a. of the syllabus. The high court later softened its stance on the severity of the emotional distress necessary, holding that where the plaintiff suffers a contemporaneous physical injury, the emotional injury "need not be severe and debilitating to be compensable." *Binns v. Fredendall*, 32 Ohio St.3d 244 (1987), paragraph one of the syllabus. In such cases, the plaintiff may recover for "mental anguish, emotional distress, anxiety, grief or loss of enjoyment of life caused by the death or injury of another, provided the plaintiff is directly involved and contemporaneously injured in the same * * * accident with the deceased or other injured person." *Id.* at paragraph three of the syllabus.

{¶22} In this case, the trial court wrote in part as follows: "While *Binns v. Fredendall* recognizes a cause of action for negligent infliction of emotional distress, it does not address the effect of the wrongful death statute on a plaintiff's claim. Therefore, Joshua Cline is permitted to assert any claims for mental anguish arising from his own separate physical injuries but is precluded from introducing evidence or claiming mental anguish associated with the death of Corey Cline as those claims have been settled." The trial court cited to *Binns* for what appears to be two propositions.

{¶23} First, after noting that *Binns* does not address the effect of the wrongful death statute on a claim alleging negligent infliction of emotional distress, the trial court implicitly concluded that a wrongful death claim subsumes the other negligence claim. This Court concludes that the trial court interpreted *Binns* too narrowly.

{¶24} In that case, a car accident resulted in the gruesome death of one passenger that was witnessed by the other passenger. The passengers were cohabiting paramours. The *Binns* court rejected the tortfeasor's argument that the surviving girlfriend could not prevail on her

mental anguish claim despite her failure to hold any requisite statutory status as either "surviving spouse, dependent children, parents, or next of kin of the decedent" pursuant to R.C. 2125.02(B)(5), the wrongful death statute. *Binns*, 32 Ohio St.3d at 246. Instead, the high court recognized that a person injured in the same accident that resulted in death or injury to another may recover for emotional injuries arising out of the "mental anguish, emotional distress, anxiety, grief or loss of enjoyment of life caused by the death or injury of another." *Id.* at 247.

{¶25} Although the plaintiff involved in *Binns* was a non-relative, the high court did not limit its holding in that respect. In fact, the *Binns* court wrote:

> The fact that mental anguish over the death of a relative is compensable in a wrongful death action does not preclude plaintiff's recovery of damages for such injury where plaintiff also suffers physical injuries in the same accident that caused the death of another. Plaintiff's recovery for mental anguish caused by the death of another, however, must be predicated upon her direct involvement in the accident, not upon the mere fact of the death, which is an aspect of a wrongful death action.

*Id.* at 246. In this way, the high court appears to have recognized a distinction between the grief arising merely as a result of losing a family member and the mental anguish arising out of a shared traumatic event which may likely be compounded by the emotional effects of issues such as survivor guilt and the stark confrontation with one's own mortality.

{¶26} Moreover, when delineating the factors to consider in determining whether emotional injuries were reasonably foreseeable, the high court expressly recognized, and accorded greater weight to the fact, that the bystander/plaintiff may be "closely related" to the victim. *Paugh* at paragraph three b. of the syllabus. Reading *Binns*, which did not relegate bystander claims for negligent infliction of emotional distress to only non-beneficiaries, in conjunction with *Paugh*, it is reasonable to conclude that bystander mental anguish claims are

not subsumed within wrongful death claims only because the bystander qualifies as a wrongful death beneficiary.

{¶27} In the instant case, Joshua presented evidence that he was involved in the same accident as that which tragically took his brother's life. In fact, the trial court and parties all recognize this, as all acknowledge that Joshua may maintain his action to recover for his personal physical and concomitant emotional injuries resulting from Mr. Stein's alleged negligence. In addition, Joshua presented evidence that he may have sustained physical injuries as a result of the accident. Given our conclusion that a claim for negligent infliction of emotional distress is not subsumed within, and therefore not precluded by, a wrongful death claim, the trial court erred by granting summary judgment in favor of the defendants on this basis.

{¶28} Second, the trial court relied on *Binns* to limit any claim by Joshua for emotional distress to those mental injuries that occurred solely in tandem with physical injuries. This ignores that the law in Ohio recognizes a cause of action for negligent infliction of emotional distress based on witnessing harm to another even in the absence of the plaintiff having personally sustained any physical injuries. *Paugh* at paragraph two of the syllabus. By limiting Joshua's emotional distress claim to include only such injuries that may have arisen "from his own separate physical injuries," the trial court discounted the viability under Ohio law that a bystander need not sustain contemporaneous physical injuries to maintain a claim for negligent infliction of emotional distress. Accordingly, even in the absence of any evidence by Joshua that he sustained physical injuries as a result of the accident, an award of summary judgment in favor of the defendants was error.

{¶29} Based on the above reasoning, this Court concludes that Joshua met his reciprocal burden of presenting evidence on the necessary elements of negligent infliction of emotional

distress. Moreover, the trial court erred by concluding that such a claim would be subsumed within his wrongful death claim. Accordingly, the trial court erred by granting summary judgment in favor of Messrs. Stein and Geitgey on Joshua's negligent infliction of emotional distress claim beyond his claim for mental anguish arising solely from his own separate physical injuries.

Wrongful death

{¶30} To prevail on a claim for wrongful death, a plaintiff must prove:

(1) a wrongful act, neglect, or default of the defendant that proximately caused the death and that would have entitled the decedent to maintain an action and recover damages if death had not ensured; (2) the decedent was survived by a spouse, children, parents, or other next of kin; and (3) the survivors suffered damages by reasons of the wrongful death.

*McDowell v. DeCarlo*, 9th Dist. Summit No. 23376, 2007-Ohio-1262, ¶ 34; *see also* R.C. 2125.01 and 2125.02. "The right to sue for wrongful death in Ohio is a statutorily created right." *Tennant v. State Farm Mut. Ins. Co.*, 81 Ohio App.3d 20, 23 (9th Dist.1991); s*ee also Love v. Nationwide Mut. Ins. Co.*, 104 Ohio App.3d 804, 808 (10th Dist.1995). Specifically, "the surviving spouse, dependent children, parents, or next of kin of the decedent" must seek their damages for loss of society and mental anguish via a wrongful death action brought in the name of the personal representative of the decedent. R.C. 2125.02(A)(1)/(B)(3) and (5). The personal representative of the decedent possesses the exclusive authority to enter into a settlement on behalf of all interested persons. *Tennant* at 24. In fact, "[a]bsent fraud or other similar ground, a proper settlement, one which is approved by the probate court and which is executed by a [personal representative] is binding upon the beneficiaries and bars any further prosecution of a wrongful death claim." *Love* at 810, citing *Tennant* at 24.

{¶31} In this case, both Mr. Stein and Mr. Geitgey argued in their motions for summary judgment that Joshua was estopped from maintaining a claim for mental anguish arising out of his brother's death because that claim was settled in the wrongful death action initiated in the probate court. In its judgment entry, the trial court found that "[t]he parties are [] in agreement that Joshua was compensated through the settlement of the wrongful death claim for his mental distress as related to his brother's death." In fact, Joshua has always argued that he was *not* compensated via the wrongful death settlement. Nevertheless, "'a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof.'" *Murray v. David Moore Builders, Inc.*, 177 Ohio App.3d 62, 2008-Ohio-2960, ¶ 12 (9th Dist.), quoting *State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 92 (1994).

{¶32} Here, there is no dispute that Joshua was in the category of next of kin of his brother Corey. Accordingly, as a matter of law, any claim for mental anguish arising within the context of wrongful death was necessarily resolved, could have been resolved, or should have been resolved when Corey's personal representative settled the wrongful death action in the probate court. The personal representative was charged with acting on behalf of all statutory beneficiaries. *See Cushing v. Sheffield Lake*, 9th Dist. Lorain No. 13CA010464, 2014-Ohio-4617, ¶9. That she agreed to a settlement that did not award any specified amount of compensatory damages to all statutory beneficiaries is not a matter properly before this Court for review in this appeal. Because Joshua's claim for mental anguish arising out of the wrongful death of Corey should have been resolved in the wrongful death action before the probate court, he is estopped from relitigating that claim. Accordingly, the trial court properly granted summary judgment in favor of Messrs. Stein and Geitgey in regard to Joshua's claim alleging wrongful death.

Conclusion

**{¶33}** For the reasons articulated above, this Court concludes that genuine issues of material fact exist with regard to Joshua's claim alleging negligent infliction of emotional distress, and that the defendants were not entitled to judgment as a matter of law on that claim. Accordingly, the trial court erred by rendering summary judgment in favor of the defendants on the claim for negligent infliction of emotional distress and precluding Joshua from presenting evidence regarding his mental anguish associated with witnessing Corey's death. We further conclude, however, that Joshua is estopped from relitigating a claim for wrongful death, as that claim was necessarily fully resolved when Corey's personal representative settled the wrongful death action on behalf of the statutory beneficiaries. Accordingly, the trial court properly granted summary judgment in favor of the defendants on that claim. Joshua's assignment of error is sustained in part, and overruled in part.

## III.

**{¶34}** Joshua's assignment of error is sustained in part, and overruled in part. The judgment of the Wayne County Court of Common Pleas is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS.

HENSAL, P. J.
DISSENTING.

{¶35} I respectfully dissent because I do not believe that this Court has jurisdiction over the appeal. Under Article IV, Section 3(B)(2) of the Ohio Constitution, this Court has jurisdiction over judgments and final orders. The trial court's journal entry does not qualify as a "judgment" because it is not "a final determination of the rights of the parties." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150 (1976). Thus, this Court must examine whether it constitutes a "final order," which the General Assembly has defined in Revised Code Section 2505.02. Section 2505.02(B) describes seven types of final orders,

including "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment." According to the Ohio Supreme Court, an order "affects a substantial right" if it is an order that, "if not immediately appealable, would foreclose appropriate relief in the future." *Southside Community Dev. Corp. v. Levin*, 116 Ohio St.3d 1209, 2007-Ohio-6665, ¶ 7, quoting *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63 (1993). Although directed by this Court to address whether the trial court's journal entry is a final order, none of the parties have asserted that appropriate relief would be foreclosed to the Clines if the entry is not immediately appealable. Nor is that conclusion self-evident from the record. In addition, I am concerned that the trial court's entry does not contain any parameters about what evidence of Joshua's emotional distress will or will not be permitted to be introduced at trial. *See Walker v. Walker*, 9th Dist. Summit No. 12978, 1987 WL 15591, *2 (Aug. 3, 1987) (explaining that a "judgment must be definite enough to be susceptible to further enforcement" and "'so that the parties may be able to ascertain the extent to which their rights and obligations are fixed * * *.'"), quoting (Footnotes omitted in *Walker*.) 46 American Jurisprudence 2d, Judgments, Section 107 (1969). Accordingly, it is my assessment that this Court does not have jurisdiction to consider the appeal.

APPEARANCES:

CRAIG G. PELINI, Attorney at Law, for Appellant.

DANIEL E. CLEVENGER, Attorney at Law, for Appellee.

EDWARD A. DARK, Attorney at Law, for Appellee.

JOHN L. ANTEL, Attorney at Law, for Appellee.